IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PURCELL BRONSON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DONALD KELCHNER; THE DISTRICT | ) | |
| ATTORNEY OF THE COUNT Y OF | ) | Civil Action No.07-1191 |
| ALLEGHENY; and THE ATTORNEY GENERAL | ) | Magistrate Judge Amy Reynolds Hay |
| OF THE COMMONWEALTH OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Respondents | ) | |

## MEMORANDUM OPINION AND ORDER

Purcell Bronson ("Petitioner") is a twice-convicted murderer. While serving a life sentence in prison for his first conviction for murder of the second degree, he committed his second murder by killing a fellow inmate for which he was convicted of first degree murder. It is that second conviction for murder which Petitioner seeks to attack via the present habeas petition.

Because his petition is time barred, it is properly dismissed. Alternatively because he has procedurally defaulted most of his claims, the petition is properly dismissed. Lastly, because he fails to establish entitlement to relief under AEDPA by failing to even argue the State Courts' disposition was contrary to or an unreasonable application of Supreme Court precedents, the petition is properly dismissed.

**I. Relevant Procedural and Factual History**

Petitioner is deemed, pursuant to the prisoner mail box rule, to have filed the instant

habeas petition, at the earliest, on July 22, 2007, the date whereon he signed his habeas petition.

Dkt. [17].   In that petition, he raised the following issues:

> Ground One: Evidence wrongly obtained . . .
>     Prison officials seized my outgoing mail and used the content as an exhibit
> at trial against me.
> Ground Two: Bias[ed] Judge. . . .
>     Sentencing Judge issue[d] an ex parte opinion in my absence directing
> prison officials as to how to confine me.
> Ground Three: Prosecutorial misconduct. . . .
>     D.A. Conrad direct[ed] prison officials to search my prison property for
> evidence to use against me.
> Ground Four: Insufficiency of [the] evidence. . . .
>     The Commonwealth failed [to carry] its burden to prove the element of
> intent for first degree murder and/or disprove my defense of self defense.

Dkt. [17] at 9 to 12.   The Respondents filed an answer, Dkt. [24], raising, *inter alia*, AEDPA's

statute of limitations defense and the fact that Petitioner procedurally defaulted some of his

claims because his PCRA petition was untimely filed and for other reasons as well.   Petitioner

filed a traverse but failed to address the AEDPA statute of limitations argument.  Dkt. [29].

## A.  The State Court Proceedings

Petitioner represented himself at trial but had back up counsel with a Public Defender.

He was convicted by a jury of first degree murder on June 12, 1995 and was sentenced to life in

prison on June 13, 1995, being that the jury was unable to reach a verdict of death.  In the

sentencing order, the Trial Judge wrote the following:

> AND NOW, to wit this 13th day of June 1995, in open Court, defendant
> appearing with counsel the sentence of the law is that you, Purcell Bronson, pay a
> fine of $6^{1/4}$ cents to the Commonwealth of Pennsylvania, pay the costs of
> prosecution and undergo an imprisonment for the period of your natural life and
> stand committed, and be sent to the Western Correctional Diagnostic and

Classification Center at Pittsburgh, Pennsylvania to be transferred to such institution as may be deemed appropriate. This sentence is to begin and take effect at the expiration of the sentence the defendant is now serving.

Moreover in an effort to prevent further harm to other persons, the court makes the following findings of fact:

(1) On December 8, 1967, the defendant was sentenced to three to ten years for the rape of Lolly Mae Douglas.

(2) On October 6, 1972, while in prison, the defendant was sentenced to two to four years in prison for the stabbing of Curt Rutan.

(3) On November 26, 1979, the defendant was sentenced to life imprisonment for the murder and robbery of Howard Ivy.

(4) On June 13, 1995, while serving that life sentence, the defendant was found guilty of First Degree Murder for the killing of Lance Jolly.

(5) The defendant was 46 years of age that the time of the murder: the deceased was 20 years of age.

(6) The record in this case indicates that the defendant, by virtue of his intelligence, his ruthlessness, his incessant stream of lawsuits, and his substantial bank account, is a power within the walls of the prison.

(7) As long as the defendant breathes, he will be a danger to the safety and lives of the guards and prisoners within the prison walls.

WHEREFORE, the Court strenuously urges the governor and the commissioner of corrections to take whatever lawful measures that are possible to confine the defendant for the duration of his natural life in such a manner that he is unable to harm or kill another human being. The court further directs that these findings and recommendation be appended to the above captioned order whenever it is copied or reproduced.

Dkt. [24-3] at 7 to 8.

The facts underlying petitioner's conviction were summarized in the Trial Court Opinion

which was filed in response to Petitioner's direct appeal to the Superior Court and are as follows:

This case involves a killing at the State Correctional Institution at Pittsburgh. Terry Cvetan, a correctional officer, testified that at about 8:20 am on June 4, 1993, he observed the victim, Christopher Jolly, in cell #46 on the south block of the institution. Mr. Jolly told him that he had just been released from the Restricted Housing Unit (RHU) and he was moving into his cell, together with another inmate. As Officer Cvetan continued walking down the cell block, he saw the defendant enter cell #46. The defendant and Mr. Jolly began to scuffle. Officer Cvetan told them to "break it up" and he blew his security whistle. As Mr. Jolly was being handcuffed, he stated that he had been stabbed by the defendant, who

threw the shank over the railing. Officer Cvetan then observed blood coming from a puncture wound on the left side of Mr. Jolly's chest. (N.T. 6/8/95, pp. 80-97).

Corrections Officer John Trainor testified that he assisted in escorting the defendant away from the scene after the incident. He overheard the defendant say to another inmate, "That will keep him out of our business." (N.T. 6/4/95, pp. 110-113). Clarence Hunt, of the Pennsylvania State Police, stated that a homemade weapon was found on top of a screen which covers the bottom floor of the cell block. (N.T. pp. 141-145).

The victim's brother, Ray Jolly, testified that the defendant sent him a money order for $300. Ray was supposed to buy crack cocaine with the money and give it to a person designated by the defendant, who would smuggle it into the prison. Ray agreed to do this, but, instead, he kept the money and he never followed through with the plan. (N.T. 6/4/95, pp. 164-168). The victim's mother, Julia Jolly, testified that the defendant called her on the telephone two or three times regarding the money that was sent to Ray. She told him that he would get his money back. Mrs. Jolly also identified four letters that were written to her by her son. (N.T. 6/4/95, pp. 180-192).

Abdulrezak Shakir, the forensic pathologist, stated that when he performed an autopsy on the victim, he discovered two stab wounds to the chest, one of which penetrated the lung and the heart and caused the victim's death. In addition, he found a stab wound to the arm and an abrasion across the back of the victim's left hand, which was determined to be a "defensive wound." (N.T. 6/4/95, pp. 217-229).

Dkt. [24-2] at 18 to 18. At trial, Petitioner took the stand in his own defense, claiming that he was engaged in self defense and the victim was the aggressor. The jury, apparently unpersuaded by Petitioner's version, convicted him of first degree murder nonetheless.

After his conviction and sentence, Petitioner, through the Public Defender's Office, filed an appeal to the Superior Court. On appeal, Petitioner raised the following claims:

I. THE TRIAL COURT ERRED BY NOT DECLARING A MISTRIAL, WHERE MR. BRONSON WAS PREJUDICED BY THE PROSECUTION'S FAILURE TO DISCLOSE A DOCUMENT THAT WAS LATER USED TO IMPEACH HIS TESTIMONY
    A. THE PROSECUTION VIOLATED ITS DUTY UNDER THE DISCOVERY RULES TO DISCLOSE THE DOCUMENT EITHER BEFORE OR DURING TRIAL.
    B. THE DISCOVERY VIOLATION ENTITLES MR. BRONSON TO A NEW TRIAL WHERE PREJUDICE IS

ESTABLISHED BY THE DAMAGE TO MR. BRONSON'S
CREDIBILITY AND THE EFFECT OF THE VIOLATION ON
THE DEFENDANT'S TRIAL STRATEGY.

II.  THE COURT EXCEEDED ITS SENTENCING AUTHORITY IN
IMPOSING AN ILLEGAL SENTENCE

III.  THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A
REASONABLE DOUBT THAT MR. BRONSON HAD THE SPECIFIC
INTENT REQUIRED TO SUPPORT A CONVICTION OF MURDER IN THE
FIRST DEGREE.

Dkt. [24-3] at 2.  The Superior Court affirmed the conviction on March 21, 1997.  Dkt. [24-3] at

55 to 65.  Petitioner, through the Public Defender's office, then filed a Petition for Allowance of

Appeal ("PAA") wherein he raised the following issues:

I.  THE DECISION OF THE PANEL BELOW THAT THE
COMMONWEALTH'S FAILURE TO DISCLOSE TO MR. BRONSON A
LETTER THAT IT USED TO IMPEACH HIM DID NOT ENTITLE HIM TO A
NEW TRIAL BECAUSE THE EVIDENCE WAS NOT EXCULPATORY NOR
PREJUDICIAL IS CONTRARY TO THIS HONORABLE COURT'S
DECISIONS IN COMMONWEALTH V. JONES, 542 PA. 668 A.2D 491 (1995
[sic], COMMONWEALTH V. MOOSE, 529 PA. 218, 602 A.2D (1992) AND
THE SUPERIOR COURT'S PRIOR DECISION IN COMMONWEALTH V.
MELENDEZ, 326 PA. SUPER. 509, 474 A.2D 617 (1984). . . .

II.  WHETHER THE COURT EXCEEDED ITS SENTENCING AUTHORITY
AND IMPOSED AN ILLEGAL SENTENCE WHEN IT MADE FINDINGS OF
FACT AND "RECOMMENDATIONS" ON MR. BRONSON'S CONDITIONS
OF CONFINEMENT A PART OF THE MANDATORY LIFE SENTENCE
ORDER IS AN ISSUE OF FIRST IMPRESSION WITH THIS COURT. . . .

III.  THE HOLDING OF THE PANEL THAT THE EVIDENCE IS SUFFICIENT
TO SUPPORT A FINDING OF INTENT TO KILL IS CONTRARY TO THIS
HONORABLE COURT'S PRIOR DECISIONS IN COMMONWEALTH V.
AUSTIN, 394 PA. 146, 575 A.2D 141 (1990) AND COMMONWEALTH V.
WOJDAK, 502 PA. 359, 466 A.2D 991 (1983). . . .

Dkt. [24-4] at 2.  The Pennsylvania Supreme Court denied the PAA on October 2, 1997.

Waiting until January 7, 2002, Petitioner then filed a pro se PCRA petition. Counsel in the person of Erika Kreisman was appointed and she filed an amended PCRA petition. The PCRA court held the PCRA petition to be untimely filed under state law. Dkt. [24-6] at 35 to 39. Petitioner, through Attorney Kreisman, filed an appeal to the Superior Court in which the sole issue raised was "WAS THE INSTANT PCRA TIMELY FILED?" Dkt. [24-7] at 9. The Superior Court issued its decision affirming the PCRA court's disposition on February 23, 2006. Dkt. [24-8] at 1 to 4. Petitioner, through Attorney Kreisman, then filed a PAA, which the Pennsylvania Supreme Court denied on August 29, 2006. Petitioner, waiting for nearly 11 months thereafter, then executed the current federal habeas petition on July 22, 2007.

## II. DISCUSSION

### A. The Petition is Time Barred

The Respondents argued that Petitioner's current petition is time barred because Petitioner did not file it within one year of his conviction becoming final. Dkt. [24] at 9 to 10. Although Petitioner filed a traverse, he failed to address the issue of the time bar. Accordingly, the court finds Petitioner waived any issue with respect to the time bar. The Court agrees that this petition is time barred.

AEDPA provides, in part, that a federal habeas petitioner attacking his conviction must file his habeas petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 224(d)(1)(A). Petitioner's conviction became final 90 days after October 2, 1997, (which is the date whereon the Pennsylvania Supreme Court denied the PAA in his direct appeal), i.e., December 31, 1997. See United States Supreme Court Rule 13 (providing that a petition for

certiorari must be filed no later than 90 days after entry of an order denying discretionary review by the state court of last resort); Stokes v. District Attorney of Philadelphia, 247 F.3d 539, 542 (3d Cir. 2001) (explaining that AEDPA's phrase "became final by ... expiration of time for seeking [direct] ... review" includes the 90 days time in which to seek certiorari); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999).

Hence, the one year statute of limitations began to run as of December 31, 1997. Accordingly, Petitioner had until on or about December 31, 1998, in which to file his habeas petition. However, he failed to do so and did not file the instant habeas petition until July 22, 2007.

It is true that a properly filed PCRA petition can toll the running of AEDPA's one year statute of limitations. 28 U.S.C. 2244(d)(2).[1] Although Petitioner did file a PCRA petition, he did not do so until January 7, 2002, as found by the State PCRA court. Dkt. [24-6] at 36 ("No action was taken by the Defendant until January 7, 2002, when he filed a pro se Post Conviction Relief Act Petition."). However, that untimely filed PCRA petition has no impact on the timeliness of Petitioner's present habeas petition under AEDPA for two independent reasons. First, because the State Courts determined that the PCRA petition was time barred, it cannot constitute a "properly filed" petition within the contemplation of 28 U.S.C. §2244(d)(2) and, hence, could not toll the running of AEDPA's statute of limitation. Pace v. DiGuglielmo, 544

---

[1] 28 U.S.C. § 2244 (d)(2) provides that

The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

U.S. 408, 413 (2005)("[A]n application is *properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings' including 'time limits upon its delivery'")(quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000)); Merritt v. Blaine, 326 F.3d 157, 165-66 & n. 6 (3d Cir. 2003) (holding that because petitioner's second PCRA petition was untimely under state law, it was not "properly filed" for purposes of AEDPA).  Second, even if it were properly filed, because AEDPA's statute of limitations had already run, as of December 31, 1998,  there was nothing left for the PCRA petition to toll.  Johnson v. Hendricks, 314 F.3d 159, 161-62 (3d Cir. 2002)("§ 2244(d)(2)'s tolling provision excludes time during which a properly filed state post-conviction is pending but does not reset the date from which the one-year limitations period begins to run")(citing Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)). Accordingly, because AEDPA's statute of limitations began to run on December 31, 1997, and Petitioner did not file his habeas petition by December 31, 1998, and indeed did not file the instant petition until at the earliest, July 22, 2007, the petition is time barred and must be dismissed based thereon.

Petitioner does argue in a section of his traverse that the PCRA State Courts erred in determining that his PCRA petition was time barred.   Petitioner makes this argument in response to the Respondents' invocation of the procedural default defense.  Dkt. [29] at 6.  Petitioner's argument has no bearing on the fact that his federal habeas petition is time barred because when a postconviction petition is not timely under state law, "'that [is] the end of the matter' for purposes of § 2244(d)(2)."  Pace, 544 U.S. at 414 (citation omitted).  See also Washington v. Sobina, 509 F.3d 613, 622 (3d Cir. 2007)("we note that the United States Supreme Court and this court have repeatedly held, in the context of the AEDPA tolling provision, 28 U.S.C. §

2244(d)(2), that when a postconviction petition is not timely under state law, 'that [is] the end of the matter for purposes of § 2244(d)(2).' <u>Pace</u>, 544 U.S. at 414(citation omitted); <u>see also</u> <u>Allen v. Siebert</u>, __ U.S. __, 128 S.Ct. 2, 4 (2007). 'Once the Pennsylvania court has so decided, it would be an undue interference for a federal district court to decide otherwise.' <u>Merritt v. Blaine</u>, 326 F.3d 157, 168 (3d Cir. 2003)"). Even if this Court concluded, which it does not, that the State Courts erred in construing their PCRA statute of limitations, such would not permit this Court to find the PCRA petition timely or properly filed.

Accordingly, this petition is properly dismissed as time barred.

### B. Procedural Default

In the alternative, some of Petitioner's claims are procedurally defaulted. Petitioner failed to present Ground Two, i.e., the issue of his sentencing judge as being biased (which allegedly constituted a violation of the federal constitution) in his direct appeal to the Superior Court.[2] It may be true that he presented this issue in the PCRA proceedings, Dkt. [24-5] at 7, but because the State Courts held that the PCRA petition was untimely, the claim of a biased judge was procedurally defaulted given that the PCRA time bar is an independent and adequate state bar at the time of Petitioner's failure to comply. <u>Catanch v. Larkins</u>, No. 98-85, 1999 WL 529036 (E.D. Pa. July 23, 1999)(holding certain claims which were not otherwise exhausted had been procedurally defaulted because the claims could not be brought under a second PCRA petition as that petition would be time barred and that the State courts apply the PCRA statute of limitations consistently, thus rendering it an adequate and independent state law ground); <u>Holland v. Horn</u>,

---

[2] Petitioner did present in his direct appeal, a related issue of the Sentencing Judge having committed error in including the findings of fact and recommendation in the sentencing order. However, that is a distinct claim, as is made clear in Petitioner's amended PCRA petition. Dkt. [24-5] at 7 to 8.

150 F.Supp.2d 706 (E.D. Pa. 2001); Commonwealth v. Barrett, 761 A.2d 145 (Pa.. Super. 2000)(applying the PCRA time bar to a PCRA petition filed July 1998). Nor does Petitioner's argument that the State Court erred in applying the PCRA time bar serve to establish cause and prejudice so as to overcome the procedural default for two separate reasons. First, the Court is not convinced by Petitioner's bald assertions that the state court did err under state law. He cites not a single case nor statute to show that the PCRA court erred in construing the PCRA statute of limitations.

Before the PCRA court, Petitioner offered the excuse that he needed a file in order to prepare his PCRA petition and that the prison officials interfered with his acquiring the file. The PCRA court rejected this claim and found that Petitioner did not need the allegedly missing "file" in order to prepare and file his PCRA petition in a timely manner. Dkt. [24-6] at 38 to 39. The PCRA Court found that

> after reviewing the Defendant's claims, this court finds that the "interference by government officials" exception to the Post Conviction Relief Act does not apply. In his pro se PCRA Petitioner, the Defendant raises a claim regarding Judge Novak's sentencing Order, two (2) ineffectiveness claims regarding improper impeachment and improper seizure of evidence and a claim that the Coroner's inquest was not neutral. All of these issues were known to the Defendant at or before trial, and all of these issues, with the exception of the coroner's inquest issue, were raised in some form by the Defendant in his direct appeal. There is no reason why the Defendant could not have filed his pro se PCRA Petition raising these issues within the time requirements and amended his Petition later once counsel had been appointed and he had recovered his "files". As our Superior Court noted in Commonwealth v. Crider, 735 A.2d 730 (Pa.Super. 1999), "where a petitioner has access to all of the facts underlying a post-conviction claim well within the period of limitations for filling [sic] that claim, we cannot say that the petitioner's failure to timely file the claim is "the result of interference by government officials with the presentation of this claim." Commonwealth v. Crider, 735 A.2d 730, 733 (Pa.Super. 1999).
> Here, the Defendant was aware of the claims contained in his PCRA Petitioner prior to its due date, and was not prevented from filing any legal

> documents by prison or other government officials.  Therefore, the Defendant has
> failed to satisfy the requirement of the "interference by government officials"
> exception to the time limitation requirements of the Post Conviction Relief Act.
> The Defendant's PCRA Petition was untimely, and this Court therefore lacks
> jurisdiction to address its merits. <u>Commonwealth v. Fahy</u>, 737 A.2d 214, 223 (Pa.
> 1999).

Dkt. [24-6] at 38.  There is no state law error in the foregoing as far as this court can tell.

Moreover, Petitioner's sole argument raised against the procedural default based upon the untimeliness of the PCRA petition, concerned the prisoner mail box rule and its converse.  Dkt. [29] at 6.  However, that argument does nothing to counter the PCRA court's above quoted rationale and findings.   Moreover, even Petitioner's argument regarding the converse of the prisoner mail box rule is unconvincing.  The Superior Court found that the missing "files" were delivered to an attorney, who represented Petitioner in at least one federal civil rights suit, and who was attempting to help Petitioner to recover the missing files.  The files were delivered to that attorney in May of 2001.  The Superior Court determined that Petitioner had 60 days from that date in which to file his pro se PCRA petition because, as of that date, any governmental interference had ended.  Petitioner argues that rather than the date the files were delivered to Petitioner's attorney, who was representing him in a civil rights matter, some other date should have been used, such as the date the files were actually delivered to Petitioner.  However, the clear rule is that delivery to an agent constitutes delivery to the principal.  <u>Bryan v. Bartlett</u>, 435 F.2d 28, 33 (8th Cir. 1970)("Of course, it is an elementary principle of agency that delivery to a principal's agent is the equivalent of delivery to the principal."); <u>Premier Bank v. Cohen-Esrey Properties, Inc.</u>, 859 F.Supp. 1388, 1396 (D. Kan. 1994)("Delivery to one's agent constitutes delivery to the principal").  <u>See</u> <u>also</u> <u>Farris v. JC Penney Co., Inc.</u>, 176 F.3d 706 (3d Cir.

1999)(looking to, inter alia, principles of agency law to answer question of attorney's authority to settle case); Smith v. Delaware Valley Auto Spring Co., 642 F.Supp. 1112, 1116 (E.D. Pa. 1986)("because the attorney-client relationship is one of principal and agent, I should apply the general principles of agency law."). There is no error of state law in the Superior Court's reasoning either. Accordingly, Petitioner having failed to show cause and prejudice, has procedurally defaulted this claim of judicial bias due to the PCRA petition being untimely.

In addition, those claims that were not procedurally defaulted because of the PCRA being untimely filed, i.e., those claims raised in the direct appeal or, at least some of them, appear to have been procedurally defaulted for two other reasons. First, the issues raised in the instant habeas petition are not substantially equivalent to the issues raised on direct appeal and hence were not presented to the State Courts. In order to exhaust, and consequently, in order to avoid procedurally defaulting a federal claim, a state prisoner must have first "fairly presented" in the state courts all of his federal constitutional claims that he raises in his federal habeas petition.[3] For claims to be "fairly presented" in state court, claims raised in state court must be "substantially equivalent to those raised in federal court." Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996). Furthermore, not only must the legal theory presented to the state courts and the federal habeas courts be the same but the facts presented to the state courts underlying those legal theories must be the same facts presented to the federal habeas court. See, e.g., Gibson v.

---

[3] See Nelson v. Washington, 51 F.3d 276 (Table), 1995 WL 156624, at *3 (7th Cir. 1995)("the fair presentment of federal issues discussed under exhaustion is also a useful approach for determining if procedural default has occurred."); United States ex rel. Sullivan v. Fairman, 731 F.2d 450, 453 n.4 (7th Cir. 1984)("Although a number of the cases cited in this opinion, including Picard v. Connor[, 404 U.S. 270 (1971)] and Anderson v. Harless[, 459 U.S. 4 (1982)], are exhaustion cases, the analysis dealing with whether a state court has been fairly apprised of potential constitutional ramifications of a claimed trial court error is equally applicable to waiver [i.e., procedural default] cases.").

Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986)("Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts.").

Instantly, we find that Ground One and Three of the habeas petition have not been fairly presented to the state courts because those Grounds are not substantially equivalent to the grounds raised in the direct appeal   Compare Ground One of the habeas petition (raising issue of evidence being unlawfully seized) with Issue I in the direct appeal (complaining of a discovery violation under state law by District Attorney for failing to disclose the item that was alleged to have been illegally seized).   Compare Ground Three (complaining of prosecutorial misconduct in directing prison officials to search Petitioner's property) with issue I in the direct appeal (complaining of a discovery violation under state law by District Attorney for failing to disclose the item that was alleged to have been illegally seized).   Accordingly, Grounds One and Three are procedurally defaulted for not having been fairly presented to the State Courts in the direct appeal because the issues presented in the direct appeal are not substantially equivalent to the Grounds raised in the habeas petition.

 Second, and alternatively, even if the claims raised in the direct appeal could be deemed to be substantially the equivalent of the Grounds raised in the instant habeas petition, to the extent that Petitioner is presenting the Grounds raised in the instant habeas as violations of federal law, the claims Petitioner raised in his direct appeal seem to have been state law claims and **not** federal law claims and hence, he procedurally defaulted any federal law claims.  See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas

petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir. 1989) ("both the legal theory and the facts supporting a federal claim must have been submitted to the state court"), implied overruling on other grounds recognized in, Hull v. Freeman, 932 F.2d 159 (3d Cir. 1991). Because he raised the claims in the direct appeal as claims of state law violations, he has procedurally defaulted any federal law claims. For example, Petitioner raised in his direct appeal the claim that the trial court erred by not declaring a mistrial for the prosecutor's failure to disclose the fact that the Commonwealth had in its possession the contract between Petitioner and another inmate for sexual favors, as an issue of the failure to comply with state rules of criminal procedure, concerning discovery and hence, the prosecutor should be sanctioned with a mistrial.[4] Dkt. [24-3] at 17 to 22. To the extent that Plaintiff's Ground One (i.e., that the evidence was illegally seized) and/or Ground Three (i.e., that the prosecutor directed prison officials to search Petitioner's property) in his habeas petition, can be said to be included in or substantially equivalent to this first issue raised on the direct appeal, the issue raised on direct appeal was raised solely as one of state law, not federal law. Any federal law claims as contained in Grounds One and/or Three are therefore waived and, hence, procedurally defaulted.

The same may be said of Ground Two in the habeas petition, i.e., the sentencing Judge was biased. The closest parallel issue in state court is Petitioner's second issue raised in the direct appeal, i.e., the issue of the Trial Judge's imposition of an illegal sentence because of the

_____

[4] In this part of the discussion, the Court assumes without deciding that this issue raised in the State Courts is substantially equivalent to Grounds One and/or Three raised in the instant habeas petition.

findings of fact and recommendation appended to the life sentence judgment order. Petitioner

raised this issue as one of an illegal sentence under Pennsylvania sentencing law. While it is true

that Plaintiff made a passing reference to the sentencing order violating "due process." Dkt. [24-

3] at 26, such a passing reference is insufficient to alert the State Courts that Petitioner was

raising a federal constitutional claim. See e.g., Wilder v. Cockrell, 274 F.3d 255, 260 (5th Cir.

2001). In Wilder, the Court explained:

> Wilder did assert, in a blanket and conclusory statement at the end of the
> evidentiary argument of his brief on direct appeal to the intermediate appellate
> court: "The [trial] Court's ruling denied [Wilder] his right to a fair trial and due
> process of law as guaranteed him under the Fifth and Fourteenth Amendments to
> the U.S. Constitution and Art. I, sec 10 Texas Constitution". This passing
> reference to the Constitution, however, did not exhaust a Chambers claim. The
> exhaustion requirement "reflects a policy of federal-state comity ... **designed to
> give the State an initial opportunity** to pass upon and correct alleged violations
> of its prisoners' federal rights". Picard v. Connor, 404 U.S. 270, 275 (1971)
> (internal quotations and citations omitted; emphasis added).
> A fleeting reference to the federal constitution, tacked onto the end of a
> lengthy, purely state-law evidentiary argument, does not sufficiently alert and
> afford a state court the opportunity to address an alleged violation of federal
> rights. Moreover, to hold that vague references to such expansive concepts as due
> process and fair trial fairly present, and therefore exhaust, federal claims is to
> eviscerate the exhaustion requirement.

Id. Accord Williams v. Peters, 41 F.3d 1512 (Table), 1994 WL 577913, at *2 (7th Cir. 1994)

("spartan allegations that defendant did 'not receive a fair trial' or cursory non-specific references

to 'due process' will generally not be deemed sufficient to alert the state court to the federal

claim"). Accordingly, Petitioner has procedurally defaulted any federal law claim with respect to

Ground Two because he failed to fairly present any federal law claim to the State Courts with

respect to this Ground.

Petitioner's bald assertion that he has met the cause and prejudice standard is unpersuasive. Dkt. [29] at 6, ¶ 3. The only apparent potential cause for Petitioner's default of Grounds One and/or Two and/or Three is a claim of ineffective assistance of direct appeals counsel for failing to raise the issues as federal law claims. However, Petitioner failed to raise such precise claims of ineffectiveness of direct appeal counsel during the PCRA proceedings and so, such a claim of ineffectiveness of direct appeal counsel, which might have been advanced as cause herein, is itself procedurally defaulted.[5] See, e.g., Edwards v. Carpenter, 529 U.S. 446, 453 (2000)(holding that "an ineffective- assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Even if Petitioner had raised such a claim of direct appeal counsel's ineffectiveness during the PCRA proceedings, the claim would still be procedurally defaulted for yet another reason, i.e., because the PCRA petition was untimely filed and, hence, any claims raised therein were procedurally defaulted.

Even if Ground One were not procedurally defaulted, we find that it is not cognizable herein. Petitioner utilized a pre-printed habeas form for pro se habeas petitioners. On that form, Petitioner circled the following paragraph as providing one of the grounds for relief:

> ©) Conviction obtained by the use of evidence gained pursuant to an unconstitutional search and seizure, (where the state has not provided a full and fair evidentiary hearing on the merits of the Fourth Amendment claim).

---

[5] The only claims of ineffectiveness are claims that trial counsel was ineffective for failing to follow up on the request for a taint hearing as to the legality of the evidence of the contract for sexual favors, Dkt. [24-5] at 15, and that trial counsel failed to object to the reference to the contract. Dkt. [24-5] at 16. There are no claims of ineffective assistance of direct appeal counsel. The only claim of ineffectiveness of appellate counsel appeared in a section entitled "new matter" in the amended PCRA petition and that raised the issue of appellate counsel's alleged ineffectiveness for failing to raise the point that the Commonwealth failed to disprove Petitioner's self defense claim as is the Commonwealth's burden. Dkt. [24-6] at 6.

Dkt. [17] at 9. Petitioner apparently circled this in relation to his Ground One, i.e., the claim that evidence of the contract for sexual favors was illegally seized and hence should not have been utilized at his trial. To the extent that Petitioner seeks to assert that his Fourth Amendment rights were violated by the seizure of this "contract" he may not do so. Stone v. Powell, 428 U.S. 465, 494 (1976) (indicating that where state has provided full and fair hearing on Fourth Amendment issue, then federal court cannot entertain a claim in habeas proceedings based on alleged Fourth Amendment violations). Moreover, it is Petitioner's burden to show that the prohibition of Stone v. Powell is not applicable. Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001)("The petitioner bears the burden of proving that his case fits within the contours of the [Stone v. Powell] exception"); Davis v. Blackburn, 803 F.2d 1371, 1372 (5th Cir. 1986); Doleman v. Muncy, 579 F.2d 1258, 1266 (4th Cir. 1978). And, indeed , on this record, Petitioner could not succeed.

The State here provided Petitioner with such an opportunity but he declined it. Dkt. [24-5] at 15 ("The [trial] Court offered to have a taint hearing about the seizure and forwarding of the letter by prison officials to the District Attorney. Defense Counsel was ineffective by never following up on this and scheduling a taint hearing"). The mere fact that Petitioner failed to avail himself of the opportunity provided does not render the opportunity less than fair and full so as to take this case outside of the rule of Stone v. Powell. Markham v. Smith, 10 Fed.Appx. 323, 326-27 (6th Cir. 2001)("All that Stone v. Powell requires is an 'opportunity' for full and fair consideration of the claim for suppression; it is up to the claimant and his counsel to decide what use, if any, is to be made of the opportunity. Jennings v. Rees, 800 F.2d 72, 77 (6th Cir. 1986).")

(some internal quotations omitted).⁶  Hence, even if Ground One were not procedurally

defaulted, it would not be cognizable herein and could not afford Petitioner relief.

Similarly, even if Ground Two (i.e., alleged bias of trial judge for writing the appendage

to the sentencing order) were not procedurally defaulted as we found above, we find that the Trial

Judge's appending his findings of fact and recommendations to the sentencing order simply did

not violate Petitioner's rights to due process.

Petitioner did not, in the State Courts and does not here, make clear whether he is raising

a substantive due process claim or a procedural due process claim or both.   We will assume he is

making both here.

A claim that one was denied substantive "due process" is a claim that one was denied

"fundamental fairness." See Riggins v. Nevada, 504 U.S. 127, 149 (1992)("We have said that

'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial,'

Spencer v. Texas, 385 U.S. 554, 563-564 (1967)[.]");  Lisenba v. California, 314 U.S. 219, 236

(1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness");

Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a claim that an . . . error

deprived the defendant of due process under the Fourteenth Amendment he must show that the

error was so pervasive as to have denied him a fundamentally fair trial").  Because the guideposts

⁶  The rule of Stone v. Powell remains good law even after the enactment of AEDPA.  In other
words, the inquiry post-AEDPA is not whether the State Courts' adjudication of the Fourth Amendment
claims was contrary to or an unreasonable application of United States Supreme Court precedent but the
proper inquiry is the Stone v. Powell inquiry of whether the state provided a full and fair opportunity to
litigate the Fourth Amendment claim. See, e.g., Sanna v. Dipaolo, 265 F.3d 1, 8-9 (1ˢᵗ Cir. 2001).
Accord, Marshall v. Hendricks, 307 F.3d 36, 81-82 (3d Cir. 2002)(applying rule of Stone v. Powell to
habeas petition filed post AEDPA and not applying AEDPA's contrary to/unreasonable application
analysis).

for decision making under the rubric of due process are lacking, the Supreme Court has

cautioned that

> In the field of criminal law, we "have defined the category of infractions that violate 'fundamental fairness' very narrowly" based on the recognition that, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990). The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order.

<u>Medina v. California</u>, 505 U.S. 437, 443 (1992)(some citations omitted).

"A trial is fundamentally unfair if there is a reasonable probability that the verdict might

have been different had the trial been properly conducted." <u>Foy v. Donnelly</u>, 959 F.2d 1307,

1317 (5th Cir. 1992) (internal quotation marks omitted).

Transposing this test to the sentencing arena and in the context of the present case, the

court is not convinced that the sentencing Judge's appending his findings and his

recommendation was fundamentally unfair insofar as Petitioner's position was not altered or

prejudiced in any way. <u>See</u>, <u>e.g.</u>, <u>Walton v. Walton</u>, Civ. A. No. 86-2250, 1986 WL 9679, at *1

(D.N.J. Aug. 18, 1986) ("The state courts' rulings do not provide the basis for issuing a writ of

habeas corpus unless the state-court proceedings were so prejudicial as to violate that

fundamental fairness which underlies the due-process clause of the fourteenth amendment.").

Although the Sentencing Judge made a recommendation to require Petitioner be kept from

harming others, Petitioner fails to show any prejudice from this, which, in this case, given

Petitioner's arguments, would mean that Petitioner would have to demonstrate that but for this

Sentencing Judge's recommendation, the DOC would not keep Petitioner in solitary

confinement.  This is doubtful at best, given Petitioner's two convictions for murder, one of

which occurred while Petitioner was in prison and given that Petitioner was already serving a life

sentence at the time of the second murder.  Indeed, the Superior Court found as much in its

opinion on direct appeal.  "The comments appended to the sentencing order do not change the

punishment.  Appellant is correct that they are surplusage and have no real bearing on how or

where he will spend the remainder of his life."  Superior Court slip op.  Dkt. [24-3] at 64.  That

DOC may have relied on the sentencing judge's verbiage in support of its decision to maintain

Petitioner in solitary confinement does not mean that in the absence of such verbiage, DOC

would not have done the same thing.  Petitioner has not, and, indeed, on this record, could not

establish prejudice, nor is he entitled to an evidentiary hearing in order to attempt to do so given

that this issue does not relate at all to Petitioner's guilt or innocence and hence is not cognizable

under AEDPA's standard for the grant of an evidentiary hearing.  28 U.S.C. § 2254(e)(2)(A) &

(B).[7]

---

[7]  The standard for determining whether a petitioner is entitled to an evidentiary hearing under
AEDPA is stringent:

 (2) If the applicant has failed to develop the factual basis of a claim in State court
proceedings, the court shall not hold an evidentiary hearing on the claim unless the
applicant shows that-
  (A) the claim relies on-
    (I) a new rule of constitutional law, made
    retroactive to cases on collateral review by the Supreme
    Court, that was previously unavailable; or
      (ii) a factual predicate that could not have been

    previously discovered through the exercise of due
    diligence; and
  (B) the facts underlying the claim would be sufficient to establish by
  clear and convincing evidence that **but for constitutional error, no
  reasonable factfinder would have found the applicant guilty of the
  underlying offense.**

To the extent that Petitioner is attempting to make out a procedural due process claim, the Court is unpersuaded. His claim is that the Sentencing Court was unauthorized under state law to do what it did. Dkt. [29] at 3 ("Judge Novak exceed[ed] his authority when he cross[ed] the divide between the judicial and the executive branches of government, when he directed prison officials to confined [sic] Petitioner to indefinite segregated confinement, a decision or recommendation he had not authority to render."). See also Dkt. [24-3] at 15 ("In addition to the life sentence, the trial court made findings of fact and recommendations which it made a part of the sentencing order. By exceeding its statutory authority in imposing sentence, the trial court imposed an illegal sentence which must be vacated."). Assuming without deciding that Petitioner has a liberty or property interest in not having the sentencing court engage in such acts, Petitioner received all the procedural due process he was entitled to via the post deprivation appeal to the Superior Court. See, e.g., Schultz v. Egan, 103 Fed.Appx. 437, 440-41 (2d Cir. 2004);[8] Zephyr Aviation, L.L.C. v. Dailey, 247 F.3d 565, 574 (5ᵗʰ Cir. 2001) ("Even assuming the

---

28 U.S.C. Section 2254(e)(2)(emphasis added). Petitioner failed to develop the factual basis of this claim in the State Courts because his PCRA petition, in which he raised this issue, was time barred and so, his failure to timely file his PCRA petition denied him an evidentiary hearing in state court as to this issue. Dkt. [24-5] at 4 to 9.

[8] In Schultz v. Egan, 103 Fed.Appx. 437, 440-41 (2d Cir. 2004), the Court explained:

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir.1996) (citing Hudson v. Palmer, 468 U.S. 517, 53 (1984); Parratt, 451 U.S. at 541). "Under the latter scenario, a deprivation effectuated through the random and unauthorized acts of government officials does not violate procedural due process so long as the government provides a meaningful remedy subsequent to the deprivation." Locurto v. Safir, 264 F.3d 154, 172 (2d Cir. 2001). "The rationale for this principle is plain: because the challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic

21

placement of a condition notice on the Jet purporting to revoke the Jet's airworthiness certificate constituted a deprivation of property, the availability of the FAA's appeal structure to remedy that deprivation after the fact provided sufficient process to protect Zephyr's procedural due process rights."); <u>Greenspring Racquet Club, Inc. v. Baltimore County, Maryland</u>, 232 F.3d 887 (Table), 2000 WL 1624496, at *7 (4th Cir. 2000)("The procedural due process claim easily is dismissed, because administrative and judicial appeals from all Baltimore County zoning decisions are readily, if not speedily, available."); <u>Kibbe v. Humphrey</u>, 908 F.2d 973 (Table), 1990 WL 102878, at *3 (6th Cir. 1990)("He also had a right of appeal, of course, and the state did not deprive Mr. Kibbe of his property without due process of law if an adequate post-deprivation remedy was available.") Given the nature of Petitioner's claim, the presence of an appeal after this alleged deprivation by the Trial Judge checkmates any procedural due process claim.

Nor is Petitioner's contention that because he did not receive a hearing in the PCRA proceedings he deserves one here, entitle him to a hearing here. 28 U.S.C. § 2254(e)(2)(A) & (B). Petitioner's failure to obtain an evidentiary hearing in the PCRA court is due to the fact that he was not diligent in filing his PCRA petition and it was held to be untimely filed.

### C. Petitioner fails to carry burden under AEDPA

In the alternative, Petitioner has not established entitlement to relief under AEDPA. Petitioner argues this case as if it were on direct appeal and as if this court sat as an appellate court to the State Courts. In fact, AEDPA provides the relevant standards by which a Federal

---

alternative other than to adopt remedies capable of righting the wrong after the deprivation." <u>Id.</u>; <u>see also</u> <u>DiBlasio v. Novello</u>, 344 F.3d 292, 302 (2d Cir.2003) ("Where a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding.").

Court is to conduct its review in federal habeas proceedings and those standards require that the habeas Petitioner establish that the State Courts' adjudication of his claims were either contrary to or an unreasonable application of Supreme Court precedent.

Petitioner mentions only six Supreme Court cases in his traverse. Three of those cases are mentioned in a section of the traverse addressing the issue of the alleged bias of his trial judge, which issue, this Court has already found to have been procedurally defaulted and further, that Petitioner failed to sustain his burden to overcome that procedural default. Dkt. [29] at 3. Nowhere does Petitioner explicitly argue that the State Courts' adjudication of his claims were contrary to or an unreasonable application of the remaining three United States Supreme Court cases (i.e., those three cases which were not the three cases contained in his procedurally defaulted argument regarding the alleged bias of his trial judge), as is his burden. Downing v. Del Papa, 145 Fed.Appx. 578, 580 (9th Cir. 2005)("Downing fails to **argue** how the Nevada Supreme Court's judgment resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States")(emphasis added); Anderson v. Secretary for Dept. of Corrections, 462 F.3d 1319, 1325 (11th Cir. 2006)("Petitioner had not met his burden of showing the state courts' decisions were 'contrary to' or 'an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.'"); Sepulveda v. U.S., 330 F.3d 55, 66 (1st Cir. 2003) (AEDPA requires state "petitioners to bear a different burden; they must demonstrate that the state court's adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" ); Peterson v. Krysevig, Civ. A. No.

07-947, 2008 WL 4372940, at *8 (W.D.Pa., Sept. 22, 2008)("it is petitioner's burden to prove the state courts' disposition of a federal claim is either contrary to or an unreasonable application of clearly established federal law.") (citing Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)).  Hence, based on his failure to even argue the AEDPA standards, Petitioner fails to establish entitlement to relief under AEDPA.

Accordingly, for any or all of the foregoing reasons, the petition is properly **DENIED**.  In like manner, a certificate of appealability is properly **DENIED** because Petitioner has not made either a substantial showing of the denial of a constitutional right or shown that jurists of reason would disagree with the court's procedural holdings.  See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

**Petitioner is advised that he has the right for thirty (30) days to file a notice of appeal from our order denying his petition, see 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. See Fed. R. App. P.  22(b)(1).**

**THESE THINGS ARE SO ORDERED** this 23rd day of December, 2008.

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

cc:     Purcell Bronson
        AF-8163
        SCI Albion
        10745, Route 18
        Albion, PA 16475

        All counsel of record via CM-ECF